UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOMINGO ARCHEVAL, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>COLLETTE GOGUEN, )<br>)<br>Respondent. )<br>) | CIVIL ACTION<br>No. 4:16-CV-40120-TSH |

**REPORT AND RECOMMENDATION**

**September 12, 2019**

Proceeding pro se, Petitioner Domingo Archeval ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction. (Docket #26). Pursuant to 28 U.S.C. § 636(b)(1)(B) and an Order referring the petition to me, (Docket #31), I recommend that Petitioner's petition be denied and dismissed.

**I.      Factual Background**

The facts underlying Petitioner's conviction, summarized below, are set out in the opinion of the Hampden Superior Court.[1]

On September 10, 1999, Hector Isales and three of his friends (Dustin Velez, Miguel Valentin, and Joseph Estanislau) were driving to Springfield in Estanislau's red Honda Civic. (Docket #40-1 at 2). After attending a party, they left to search for marijuana. (Id.). While backing into a parking space, Estanislau almost struck a group of people crossing the street behind his car. (Id.). This group included Madeline Rios, Petitioner's girlfriend. (Id. at 2-3). Rios and Estanislau

---

[1] The opinion of the Hampden Superior Court on Petitioner's motion for a new trial is attached as an exhibit to the Respondent's memorandum of law. (Docket #40-1 at 2-14).

then exchanged words. (Id.). After the exchange, Isales and his companions continued to drive around the Springfield area until meeting two friends, Anita Larriu and Maria Pantoja. (Id. at 3). Isales, Valentin, and Estanislau left the car, but Velez remained. (Id.). As Isales talked with Larriu and Pantoja, Valentin and Estanislau went to a nearby alley. (Id.). During their conversation, Rios approached in a black BMW, and asked Isales for the owner of the Honda. (Id.). Isales told Rios that Estanislau was in an alley.² (Id.). Around that same time, a group of men crossed the street and approached Isales and Pantoja. (Id.). Petitioner, his brother Carlos, and Hector Rivera were identified as being a part of the group. (Id.). Petitioner asked Isales whether he was "the one messing with my girl." (Id.).

The two men began pushing each other and eventually exchanging punches. (Id.). Several other men began hitting Isales, and Velez and Valentin joined the fight. (Id.). Isales heard someone shout, "Manito, pull out," at which point one of the men who had approached them pulled out a gun and began firing. (Id. at 3-4). Isales was shot in the chest and leg, while Velez was fatally shot in the back of the head. (Id. at 4).

On September 22, 1999, twelve days after the shooting, Isales identified Petitioner as the shooter from a photographic array. (Id.). Isales again identified Petitioner as the shooter at trial. (Id.).

Rios, the co-defendant, called Israel Bahamundi as a witness during trial. (Id.). Bahamundi testified that on the night of the shooting he was driving a taxicab. (Id.). Shortly before midnight, while waiting for a fare in a location near the fight, he heard shots fired. (Id.). He testified that he saw a person shoot a silver-colored gun and then run in his direction. (Id.). Although he slouched down in his seat to avoid danger, he watched the shooter and others run past his taxicab. (Id.). He

---

² Larriu and Pantoja testified that this conversation never took place. (Docket #40-1 at 3).

acknowledged that the situation was chaotic and that he had a brief opportunity to see the shooter. (Id.). Bahamundi described the shooter as wearing an open gray zip-up sweatshirt, with a white t-shirt, and jeans. (Id. at 5). He also identified the shooter as left-handed. (Id.).

Bahamundi testified that the police contacted him about the incident the day after the shooting. (Id.). At the Springfield Police station, the police showed him a photographic array, but he told the police officers that he was not certain if any of the persons included in the array was the shooter or present at the incident. (Id.). Although Petitioner's photograph was in the array that Bahamundi reviewed, neither the prosecutor nor Petitioner's trial counsel elicited this information from Bahamundi during trial. (Id.). Petitioner's trial counsel did not ask Bahamundi if Petitioner was the person whom he saw shoot the gun and run past his cab. (Id.).

The trial court found that after testifying, Bahamundi told an unidentified court officer outside the courtroom that he was certain Petitioner was not the shooter. (Id. at 6). Petitioner's counsel received a note that Bahamundi had made a statement to a court officer that Petitioner was not the shooter. (Id.). Petitioner's counsel immediately attempted to locate Bahamundi through his private investigator, but failed to do so. (Id.). Petitioner's counsel did not provide this information to the court, request a continuance, or otherwise attempt to resummons Bahamundi. (Id. at 7.)

## II. Procedural History

On August 31, 2000, a jury found Petitioner guilty of five offenses: (1) second degree murder (Mass. Gen. Laws ch. 265, § 1); (2) armed assault with intent to kill (Mass. Gen. Laws ch. 265, § 18(b)); (3) assault and battery by means of a dangerous weapon (Mass. Gen. Laws ch. 265 § 15A); (4) unlawful possession of a firearm (Mass. Gen. Laws ch. 269, § 10(a)); and (5) unlawful

possession of ammunition (Mass. Gen. Laws ch. 269, § 10(h)).  Commonwealth v. Archeval, No. 14-P-644, 88 Mass. App. Ct. 1120, 2016 WL 118627, at *1 (Jan. 12, 2016) ("Archeval II").

On August 31, 2000, Petitioner filed both a notice of appeal and a motion for a new trial.  (A. 9)[3].  The appeal was stayed to allow him to pursue a motion for a new trial.  (A. 11).  Petitioner filed a motion for a new trial on December 10, 2003, claiming ineffective assistance of counsel.  (A. 11; Docket #40-1 at 7).  On May 20, 2004, an evidentiary hearing on the motion for a new trial was conducted.  (A. 11).  The trial court denied Petitioner's motion on July 16, 2004.  (A. 13).  Petitioner appealed his convictions along with the denial of his motion for a new trial to the Appeals Court.  (Id.).

On appeal, Petitioner raised three arguments: (1) the trial judge committed prejudicial error by denying his request for a missing witness instruction for the Commonwealth's failure to call Valentin; (2) trial counsel was ineffective for failing to interview and elicit purportedly exculpatory testimony from Bahamundi concerning the identity of the shooter; and (3) trial counsel failed to establish that the photographic array viewed by Bahamundi included the defendant's photograph, but not other potential suspects.  Commonwealth v. Archeval, 66 Mass. App. Ct. 1110, 2006 WL 1585429, at *1 (June 9, 2006) ("Archeval I").  The Appeals Court affirmed the judgments against Petitioner and the trial court's denial of post-conviction relief.  Id. at *3.  On July 6, 2006, Petitioner filed an application for leave to obtain further appellate review from the Massachusetts Supreme Judicial Court ("SJC").  (A. 867).  The SJC denied further appellate review on July 26, 2006.  (A. 867, 911).

---

[3] On November 22, 2016, Respondent filed four appendix volumes with her motion to dismiss the unexhausted claim. (Docket #16).  References to volumes 1 and 2 of the appendix shall be cited as A. [page number].  References to volumes 3 and 4 shall be cited as A. [tab number]: [ page number].

4

On February 26, 2007, Petitioner, acting pro se, filed a second motion for a new trial as well as a motion for appointment of counsel. (A. 13). The Commonwealth filed its opposition on May 15, 2007. (Id.). On November 23, 2010, appellate counsel filed a motion for post-conviction relief, which was treated as a third motion for a new trial.[4] (A. 15, 319-37). On that date, Petitioner also filed a pro se supplement to the motion for a new trial, which claimed that both trial and appellate counsel were ineffective for failing to argue that Isales' testimony was not credible as a matter of law. (A.15, 447-60). In the motion filed by counsel, Petitioner raised, *inter alia*, the issue of alleged newly discovered evidence in the form of an affidavit from his brother Carlos in which Carlos confessed to having been the shooter. (A. at 331-32). On December 23, 2010, Petitioner filed a motion for funds to hire an expert on the reliability of eyewitness identification. (A. 15, 759). Following a hearing on January 31, 2011, the motion judge denied the defendant's motion for funds on February 14, 2011. (A. 17). On February 10, 2011, Petitioner moved pro se to withdraw his second motion for a new trial. (A. 17, 597-99).

On August 2, 2011, the court denied Petitioner's third motion for post-conviction relief. (A. 605-17). Petitioner moved to vacate the judge's decision on September 15, 2011, asserting that he expected to submit additional information from an eyewitness identification expert to supplement his motion. (A. 17, 691-23). On December 27, 2011, Petitioner's counsel filed an affidavit in support of the motion to vacate with an attached report of Dr. Jennifer Dysart, an expert in the area of identification. (A. 624, 695). On December 24, 2012, the trial judge vacated the August 2, 2011 decision denying Petitioner's third motion for post-conviction relief. (A. 693). The hearing was held on May 14, 2013. (A. Tab M:1). On December 26, 2013, the court denied Petitioner's third motion for post-conviction relief. (A. 779-93).

---

[4] The court entered several stays on Petitioner's motion between May 15, 2007 and November 23, 2010. (Docket #16 at 13-15).

Petitioner noticed his appeal on January 6, 2014. (A. 19). On appeal, Petitioner raised five issues: (1) the trial court should have granted his third motion for a new trial based on newly discovered evidence; (2) "justice was not done"; (3) the trial court erred by ruling that Petitioner was not entitled to a hearing on his motion for postconviction relief; (4) the trial court erred in allowing the Commonwealth to file and argue oppositions to the Petitioner's motions for funds; and (5) Petitioner received ineffective assistance of counsel because trial counsel did not move for a required finding of not guilty after Isales' testimony and because appellate counsel did not raise the issue on appeal. Archeval II, 2016 WL 118627, at *1. On January 12, 2016, the Appeals Court affirmed the denial of postconviction relief. Id. The SJC denied further appellate review on April 27, 2016. Commonwealth v. Archeval, 474 Mass. 1103 (2016).

### III. Petitioner's Habeas Petition and Standard of Review

Petitioner filed his initial habeas petition on August 31, 2016. (Docket #1). On October 16, 2017, Petitioner filed an amended petition in which he asserts three grounds for relief: (1) Petitioner's counsel provided ineffective assistance by failing to elicit exculpatory testimony from Bahamundi who believed Petitioner was not the shooter; (2) Petitioner's counsel was ineffective for failing to elicit testimony that the photographic array included Petitioner's photograph and Bahamundi failed to select the same as a photograph of the shooter; (3) Petitioner's counsel was ineffective for failing to move for a required finding of not guilty based on Isales' unreliable testimony.[9] (Docket #26 at p. 6-9).

To prevail on any one of these grounds for relief, "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), [Petitioner] must show that the challenged state court

---

[9] In ground three of Petitioner's amended petition, he mistakenly states that it is based on counsel's failure to move for a required finding of not guilty based on Bahamundi's unreliable testimony. (Docket #26 at 9). However, Petitioner later states in the amended petition that ground three is based on Isales' unreliable testimony. (Id. at 19). This is consistent with the procedural history of the case.

adjudication was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or that the decision 'was based on an unreasonable determination of the facts.'" Pena v. Dickhaut, 736 F.3d 600, 603 (1st Cir. 2013) (quoting 28 U.S.C. § 2254(d)).  This "highly deferential" standard of review "requires the petitioner to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" Id. (quoting Burt v. Titlow, 571 U.S. 12, 20-21 (2013)) (alteration in original).

"Clearly established federal law" under § 2254(d)(1) refers to the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision" and must be "holdings, as opposed to the dicta." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (internal quotation omitted).  A state court decision is "contrary to" existing Supreme Court precedent if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court but reaches a result different from Supreme Court precedent. Dagley v. Russo, 540 F.3d 8, 16 (1st Cir. 2008) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"[A] state court adjudication constitutes an unreasonable application 'if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Hensley v. Roden, 755 F.3d 724, 731 (1st Cir. 2014) (quoting Abrante v. St. Amand, 595 F.3d 11, 15 (1st Cir. 2010)). State court applications of federal law must be more than "incorrect or erroneous" to merit habeas relief; they must be "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520 (2003).

When determining whether the state court's decision was based on an unreasonable determination of the facts, reviewing courts "may not characterize . . . state-court factual

determinations as unreasonable 'merely because [they] would have reached a difference conclusion in the first instance." Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015). Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." This presumption applies to findings of historical, basic or primary facts – "facts in the sense of a recital of external events and the credibility of their narrators." Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000) (quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir. 1999)). The petitioner may rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Review under § 2254(d)(2) "is limited to the record that was before the state court." Garuti v. Roden, 733 F.3d 18, 23 (1st Cir. 2013) (quotation and alteration omitted).

**V.     Analysis**

In his amended petition, Petitioner raises three grounds for relief, all asserting ineffective assistance of counsel in violation of the Sixth Amendment: (1) failure of counsel to elicit testimony from Bahamundi that he was certain Petitioner was not the shooter; (2) failure of counsel to elicit testimony that Archeval's photo was in a photographic array shown to Bahamundi; and (3) failure of counsel to move for a required finding of not guilty based on the impossibility of testimony given by Isales. (Docket #26 at 6-9).

The clearly established federal law relating to ineffective assistance of counsel claims was articulated in Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a conjunctive, two-step framework for evaluating ineffective assistance of counsel claims. See Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002) ("The Strickland principles for deciding ineffective assistance of counsel claims are 'clearly established' for purposes of the AEDPA"). According to that framework:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

8

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687.

"But even this exacting demonstration is not enough in a habeas proceeding." Shuman v. Spencer, 636 F.3d 24, 31 (1st Cir. 2011). As the First Circuit explained, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Id. (internal quotation marks omitted) (alteration in original). That inquiry, the First Circuit highlighted, "is different from asking whether defense counsel's performance fell below Strickland's standard." Id. (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). Put another way, "the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (quoting Harrington, 562 U.S. at 105)). In sum, applying the deferential Strickland standard in conjunction with the deferential § 2254 standard creates – to adopt the Court's characterization – a "doubly" deferential standard. See Harrington, 562 U.S. at 105 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal citations and quotations omitted).

In deciding Petitioner's ineffective assistance claims, the Appeals Court applied the Massachusetts standard for ineffective assistance of counsel. See Archeval I, 2006 WL 1585429, at *2-3; Archeval II, 2016 WL 118627, at *3. The First Circuit has held that the Massachusetts standard for ineffective assistance is virtually identical to the federal Strickland standard. Scarpa v. Dubois, 38 F.3d 1, 8. Therefore, the Appeals Court's application of the Massachusetts

ineffectiveness standard is equivalent to the application of federal law, and its judgment must be reviewed deferentially under § 2254(d).  See id.

A.     Failure to Elicit Exculpatory Testimony

Petitioner argues that his trial counsel provided ineffective assistance when counsel failed to ask Bahamundi, on direct examination, whether Petitioner was the shooter and when counsel failed to recall Bahamundi to the stand after receiving a note that, after testifying, Bahamundi told a court officer that Petitioner was not the shooter.  (Docket #37 at 17-18).

A trial counsel's strategic decisions are rarely faulted under Strickland.  See Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) ("Under the first prong of Strickland, there is a strong presumption that counsel's strategy and tactics fall within the range of reasonable professional assistance, and courts should avoid second-guessing counsel's performance with the use of hindsight") (quotation omitted).  The decision to call a witness and what questions to ask if called are strategic.  Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) ("The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony").  "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland, 466 U.S. at 690-91.  "It is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied."  Knight, 447 F.3d at 15 (quotation omitted).

In failing to ask Bahamundi whether Petitioner was the shooter, Petitioner faults trial counsel for failing to conduct an effective investigation of what Bahamundi would testify to.

However, the record before the trial court belies that argument. During the hearing on the motion for a new trial, Petitioner's trial counsel testified, and the trial court found, that his investigator had interviewed Bahamundi shortly after the shooting and before counsel had obtained all discovery. (Docket #40-1 at 8). Later, when the investigator attempted to re-interview him, Bahamundi refused. (Id.). Hence, at the time of trial, Petitioner's trial counsel knew that Bahamundi had not selected Petitioner's photograph from the array and that that Bahamundi had described a shooter whose clothing did not match Petitioner's and who, unlike Petitioner, was left-handed. (Id.). He did not know whether Bahamundi would or would not identify Petitioner in the courtroom as the shooter. (Id.). Petitioner has failed to offer clear and convincing evidence to overcome these findings. See 28 U.S.C. § 2254(e)(1). On this factual basis, the undersigned concludes that trial counsel's investigation was reasonable. Based on this investigation, trial counsel made a reasonable tactical decision to refrain from asking a question to which he did not know the answer. See Blevins v. Hurley, No. 1:05-cv-038, 2012 U.S. Dist. LEXIS 107875, at *63 (S.D. Ohio Aug. 2, 2012) ("To have asked the questions without knowing the answers would have violated the oldest rule of cross-examination").

The undersigned also finds no error in the Appeals Court's determination that trial counsel was not ineffective in failing to ask for a continuance to recall Bahamundi to testify once he learned about Bahamundi's statement that he was sure Petitioner was not the shooter. On receipt of this information, Petitioner's trial counsel immediately attempted to locate Bahamundi. (Docket #40-1 at 9). When trial counsel was unable to locate Bahamundi, he weighed the positive momentum he had acquired from Bahamundi's favorable testimony and that of other witnesses against the loss of momentum from a continuance and determined that he should go forward with the trial. (Id.). Petitioner argues that trial counsel made this decision without the benefit of a reasonable

investigation, citing the brief window in which trial counsel could have attempted to find Bahamundi, namely the period of three hours between trial counsel's receipt of the note and his closing argument, as well as trial counsel's failure to attempt to summons Bahamundi. (Docket #37 at 19). Notwithstanding these arguments, the undersigned finds that the parameters trial counsel placed on his investigation, i.e., attempting to locate Bahamundi at his home and prior place of business during the allotted time, were supported by reasonable professional judgment in light of the circumstances then existing. See Strickland, 466 U.S. at 690-91. Bahamundi had already testified that the shooter was wearing an open gray zip-up sweatshirt, with a white t-shirt, and jeans and was left-handed. (Docket #40-1 at 5). This highly exculpatory testimony contradicted those Commonwealth witnesses who identified Petitioner as the shooter. Although these Commonwealth witnesses placed Petitioner at the scene, they also testified, contrary to Bahamundi's testimony about the shooter, that Petitioner was wearing a red shirt and portraying him as being right-handed. This enabled counsel to argue that Rivera or Carlos Archeval were more likely to have been the perpetrators.[10] The Appeals Court reasonably found that any additional testimony from Bahamundi on the issue of identification would have only expanded on his prior exculpatory testimony and been cumulative of other evidence that someone other than Petitioner was the shooter. See Knight, 447 F.3d at 16-17 (finding failure to call witness whose testimony was cumulative of that of six other alibi witnesses was a tactical decision rather than result of ineffective assistance); Duguay v. Spencer, 765 F. Supp. 2d 90, 96 (D. Mass. 2011) ("Where testimony would be cumulative of other testimony already presented, counsel's decision not to call a witness is not unreasonable"). The strong likelihood that the Commonwealth would

---

[10] Trial testimony established that Petitioner was wearing a red shirt while Carlos Archeval was wearing a gray shirt on the night of the incident. (A. Tab E: 75-76).

be able to discredit Bahamundi on cross-examination provides further support for the limited investigation.[11] See Horton v. Allen, 370 F.3d 75, 86-87 (1st Cir. 2004) (holding defense counsel's failure to call family members to testify was not ineffective assistance where the proposed alibi testimony would have been open to impeachment).

In addition to failing to show that trial counsel's investigation of Bahamundi's testimony and the failure to recall him to testify or seek a continuance was deficient, Petitioner also fails to show that he was prejudiced by these actions. See Strickland, 466 U.S. at 687. To establish prejudice, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "[I]t is not enough to show that the errors has some conceivable effect on the outcome[,] [n]or is it required, however, that the defendant prove that the errors were more likely than not to have affected the verdict." Gonzalez-Soberal v. United States, 244 F.3d 274, 278 (1st Cir. 2001) (quotation omitted). Here, had the jurors found Bahamundi's testimony credible, they would have concluded that someone other than Petitioner was the shooter. Clearly, the jurors weighed the credibility of the witnesses and chose to reject Bahamundi's testimony, which largely exculpated Petitioner, in favor of other witnesses. Further identification testimony from Bahamundi would have been cumulative and subjected Bahamundi's credibility to further attack. On this basis, the undersigned finds no error in the Appeals Court's application of the Strickland standard.

---

[11] The Commonwealth had already significantly impeached Bahamundi on its initial cross-examination. When Bahamundi testified that the second shooting victim (i.e. Velez) wore a white t-shirt, the prosecution presented the Hawaiian-style multicolored shirt actually worn by that victim. (A. Tab D: 30-31, Tab G: 31-32). Bahamundi also testified that the first shooting victim (i.e. Isales) was wearing a hooded gray sweatshirt. (A. Tab G: 30). Isales had previously testified that he was wearing a white t-shirt with an open khaki-colored shirt over it. (A. Tab D: 25-26). These clothes were introduced into evidence as Exhibit No. 1. (A. Tab D: 26-27). When the exhibit was shown to Bahamundi during his testimony, Bahamundi testified that the first shooting victim was not wearing those clothes. (A. Tab G: 30-31). Additionally, Bahamundi had testified that he did not observe the scene well because he was slouching down in the cab for safety and that he only got a brief look at the shooter. (A. Tab G: 33-37, 50-51).

B.        Failure to Elicit Testimony Regarding the Photographic Array

At trial, Bahamundi testified that, when he went down to the police station to give a statement, he was shown a number of photographs but could not identify anyone as the shooter. (Docket #40-1 at 4). Petitioner argues that he was denied effective assistance of counsel where trial counsel failed to elicit testimony that the photographic array shown to Bahamundi included a photograph of Petitioner. (Docket #37 at 22). The Appeals Court rejected this argument, holding that any benefit that might have accrued from the introduction of the array would have been inconsequential and would not have affected the outcome of Petitioner's case. Archeval I, 2006 WL 1585429, at *3. The undersigned agrees.

At trial, Bahamundi testified that, as he only got a very brief look at the shooter when the shooter ran by while Bahamundi was slouched down in his cab, he was unable to identify anyone in the photographic array. (A. Tab G: 50-51). In light of this testimony, the value of the introduction of the photographic array or testimony that it included Petitioner's photograph would have been slight. As discussed above, it is apparent that the jurors had rejected Bahamundi's exculpatory identification testimony, namely that the shooter was left-handed and wore an open gray zip-up sweatshirt with a white t-shirt, in favor of the Commonwealth's witnesses who testified that Petitioner was the shooter, was right-handed, and was wearing a red shirt. Evidence that the photographic array shown Bahamundi contained Petitioner's photograph would have been cumulative of the testimony already offered by Bahamundi. The Appeals Court reasonably applied Strickland in determining that trial counsel's failure to introduce the array did not prejudice Petitioner.

C.        Failure to Move for a Required Finding of Not Guilty

Following the close of evidence by either side, a defendant may move, pursuant to Massachusetts Rule of Criminal Procedure 25, for a required finding of not guilty. The judge shall enter a finding of not guilty of the offense charged "if the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass. R. Crim. P. 25(a). Petitioner asserts that, because Isales' testimony was patently incredible, his trial counsel was ineffective for failing to move for a not guilty finding following Isales' testimony, and that appellate counsel was ineffective for failing to raise the issue on appeal. (Docket #37 at 25-26). Petitioner argues that since Isales was the only person who could identify Petitioner as the shooter and parts of his testimony were shown to be impossible to have occurred, there was insufficient evidence to sustain the conviction as a matter of law.[12] (Id.).

In reviewing a motion for a required finding of not guilty, the court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. James, 424 Mass. 770, 784-85 (1997) (quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979)) (emphasis in original). The trial court analyzed Petitioner's argument in its December 23, 2013 decision denying Petitioner's third motion for a new trial. (A. 791-92). The motion judge, who was also the trial judge, made the following findings:

> Isales testified that the defendant pulled out a gun and shot him and he fell to the ground. Isales also testified that Velez attempted to cover Isales while Isales was on the ground and Velez got shot. Velez was found dead some distance away from

---

[12] In his argument concerning counsel's failure to move for a not guilty finding, Petitioner cites to Jackson v. Virginia, 443 U.S. 307 (1997), for the proposition that the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every element of the crime. (Docket #37 at 26). To the extent that Petitioner is arguing that he was convicted based on insufficient evidence, such a claim is barred because he did not raise it in his habeas petition or in his brief to the Appeals Court. See Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015) (holding argument not contained in habeas petition waived); Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) ("a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application").

15

> where Isales was shot. Isales's testimony that Velez was shot while crouching over him may have been weakened by evidence that Velez would have then traveled some distance after being shot in the head. Nevertheless, Isales's testimony regarding the identity of the shooter was not patently incredible. Because Isales's testimony, specifically his identification of the defendant as the shooter, was not unworthy of belief as a matter of law[,] trial counsel was not ineffective for failing to move for a required finding of not guilty on that basis.

(A. 792). Petitioner has failed to rebut these findings by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Thus, a motion for a required finding of not guilty would have been futile, and trial counsel's failure to make such a motion and appellate counsel's failure to raise the issue on appeal were, as reasonably found by the Appeals Court, not deficient. See Almonte v. United States, No. 89-2076, 1990 U.S. App. LEXIS 16941, at *10-11 (1st Cir. 1990) ("an attorney is not obligated to file motions which, in the exercise of reasonable professional judgment, he considers futile or frivolous"); Exilhomme v. Spencer, No. 08-10552-DPW, 2011 U.S. Dist. LEXIS 94790, at *22-23 (D. Mass. Aug. 24, 2011) (holding that counsel's failure to object to jury instructions was not deficient when objection would have been futile); Commonwealth v. Conceicao, 388 Mass. 255, 264 (1983) ("it is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success").

## VI. Conclusion

For the foregoing reasons, I hereby RECOMMEND that Archeval's amended petition for a writ of habeas corpus (Docket #26) be DENIED and that the instant matter be DISMISSED.[13]

      /S/ David H. Hennessy
      David H. Hennessy
      UNITED STATES MAGISTRATE JUDGE

---

[13] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See FED. R. CIV. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).